IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SNYDER INSURANCE SERVICES, INC.** and **RAYMOND F. SNYDER,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**MARK R. SOHN and KULIN-SOHN INSURANCE AGENCY, INC.,**<br><br>**Defendants.** | Case No. 16-CV-2535-DDC-GLR |

**MEMORANDUM AND ORDER**

This matter is before the court on defendants Mark R. Sohn and Kulin-Sohn Insurance Agency, Inc.'s two Motions to Dismiss for lack of personal jurisdiction (Docs. 3, 6). Plaintiffs responded (Doc. 8), and defendants replied (Doc. 9). For the reasons discussed below, the court denies both motions.

**I.      Background**

Plaintiffs Snyder Insurance Services, Inc. ("SIS") and Raymond F. Snyder filed their First Amended Complaint on August 25, 2016. Doc. 5. Plaintiffs bring claims against defendants Mark R. Sohn and Kulin-Sohn Insurance Agency, Inc. ("KSIA") for defamation, tortious interference with contractual rights and business relations, and tortious interference with prospective business advantage or relations. Doc. 5.

Plaintiffs are Kansas residents. Mr. Snyder lives in Kansas and is the sole owner and executive officer of SIS. SIS is incorporated in Kansas and SIS's principal and, indeed, only place of business is in Kansas. Thus, all plaintiffs are Kansas residents. By contrast, defendants are both Illinois residents. Mr. Sohn lives in Iverness, Illinois. Mr. Sohn owns KSIA, an Illinois

1

corporation that places insurance for clients across the United States.  Like SIS, KSIA has but one office, and it is located in Illinois.  Thus, all defendants are Illinois residents.  KSIA is registered to do business in several states throughout the United States, including Kansas, but KSIA has fewer than 10 clients in Kansas.  Revenues from those clients represent less than 2% of KSIA's total revenue.  But none of KSIA's employees or agents live or work in Kansas.  Mr. Sohn has never visited Kansas.  And neither Mr. Sohn nor KSIA has any bank accounts or property in Kansas.

This case arises out of the following events.[1]  On or before February 4, 2016, defendants filed a complaint with the State of Washington's Office of Insurance Commissioner ("Washington OIC").  It alleged that plaintiff had committed various wrongdoings and illegal acts.  Some allegations included:  (1) falsifying insurance documents; (2) defrauding insurance carriers; (3) engaging in fraud to gain a business advantage; and, (4) violating Washington laws.  Doc. 5 at 4.  The Washington OIC conducted an investigation and found that these allegations were unsubstantiated.  Doc. 5 at 4.  Then, on or about April 9, 2016, plaintiffs allege that Mr. Sohn contacted plaintiffs' existing client, Precision Gymnastics, and made similar allegations.  Doc. 5 at 4.

Plaintiffs filed a petition in the District Court of Johnson County, Kansas on or around June 28, 2016.  Doc. 1-1.  Plaintiffs claim that defendants communicated defamatory, false, and misleading statements about plaintiffs to third parties, which interfered with plaintiffs' current and prospective business relationships.  Defendants removed this case under 28 U.S.C. § 1441(a) and (b).  The court has original subject matter jurisdiction over this case under 28 U.S.C §

---

[1] Because this matter is before the court on a motion to dismiss, all well pleaded factual allegations in the Complaint are accepted as true and viewed in the light most favorable to plaintiff, to the extent they are uncontroverted by affidavits or other written evidence.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the parties provide conflicting affidavits, the court resolves those factual disputes in plaintiff's favor.  *Id.*  The parties here have submitted no such affidavits.

2

1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

## II.     Legal Standard:  Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction over defendant.  *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  When a court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, plaintiff need only make a prima facie showing of jurisdiction to defeat the motion.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The district court's jurisdiction over a nonresident defendant in a diversity suit is determined by the law of the forum state.  *Wenz*, 55 F.3d at 1506; Fed. R. Civ. P. 4(e).  "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."  *Intercon*, 205 F.3d at 1247.  Because Kansas' long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction analysis under Kansas law collapses into the inquiry required by the Due Process Clause.  *Id.*  This due process inquiry turns on two requirements: (A) the defendant must have minimum contacts with the forum state and (B) exercising jurisdiction must not offend traditional notions of fair play and substantial justice.  *OMI Holdings*, 149 F.3d at 1091.

The "minimum contacts" requirement is satisfied in one of two ways. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). A court may assert specific personal jurisdiction over the defendant if the defendant has "purposefully directed" his activities at residents of the forum and if the litigation results from alleged injuries arising out of those activities. *Id.* When the litigation does not result from defendant's forum-related activities, the court "may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Intercon*, 205 F.3d at 1247. But "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test." *Benton*, 375 F.3d at 1080. Plaintiff must demonstrate that defendant maintains "continuous and systematic general business contacts." *Id.*

Even if defendant has sufficient minimum contacts with the forum state, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013). "Such cases are rare." *Id*. To demonstrate that jurisdiction is unjust, defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). This analysis usually includes weighing five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Newsome*, 722 F.3d at 1271.

### III.  Analysis

Plaintiffs assert that the court has both specific and general jurisdiction over defendants. Plaintiffs argue that the court has general jurisdiction over defendants under an "Irrevocable Consent" that Mr. Sohn signed when he registered KSIA to conduct business in Kansas. Doc. 8 at 11. Plaintiffs call this argument "consent by registration." Doc. 8 at 11. The court addresses this argument first.

#### A.  General Jurisdiction

Plaintiffs assert that defendants are subject to general jurisdiction based on "consent by registration." Doc. 8 at 11. According to plaintiffs, Kansas has general jurisdiction over defendants because defendants registered to do business in Kansas, and the registration statute required defendants to consent to general jurisdiction in Kansas. Doc. 8 at 11; *see also* Kan. Stat. Ann. § 17-7931 (requiring foreign entities to register with the secretary of state before doing business in Kansas; and, requiring as part of the registration that the entity issue an irrevocable written consent that actions may be commenced against it in the proper court of any county as long as venue is proper). By contrast, defendants assert that Kansas does not have general personal jurisdiction over them based on the Supreme Court's rationale in *Dailmer AG v. Bauman*, 134 S. Ct. 746, 760 (2014). According to defendants, in *Dailmer*, the Court articulated a new and higher standard for finding that a corporate defendant is subject to general jurisdiction in any state other than its state of incorporation or principal place of business. Doc. 9 at 1–2.

Plaintiffs rely on *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 1047996 (D. Kan. Mar. 11, 2016) (Lungstrum, J.) to support their argument [hereinafter *Syngenta I*]. In *Syngenta I*, our court confronted the "consent by registration" issue as part of a motion to dismiss in a Multi-District Litigation. *Syngenta I*, 2016 WL 1047996, at *1.

Defendant Syngenta moved to dismiss claims by 24 non-Kansas plaintiffs for lack of personal jurisdiction and lack of venue. *Id.* Syngenta had some employees in Kansas. *Id.* And, Syngenta had registered to do business in Kansas. *Id.* Judge Lungstrum held that complying with Kansas's registration statute was sufficient consent to personal jurisdiction and denied the motion to dismiss. *Id.*

While the Tenth Circuit has not ruled on this issue, the court predicts that it would agree, if confronted with the issue, with Judge John W. Lungstrum's opinion in *Syngenta I*. In *Syngenta I*, our court joined the First, Third, and Eighth Circuits in recognizing general jurisdiction through consent by registration. *Id.* at *2; *see Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695, 697 (1st Cir. 1984) (citing *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining and Milling Co.*, 243 U.S. 93 (1917) and *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939) in noting that it is "well-settled" that a corporation may consent to jurisdiction through registration); *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) (defendant consented to jurisdiction through registration); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990) (finding consent through state registration statute); *see also Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 180–81 (5th Cir. 1992) (interpreting particular state statute as not providing necessary consent to general jurisdiction); *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576–78 (9th Cir. 2011) (citing *Pennsylvania Fire* and *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213 (1921) in holding that a court must look to state law to determine the effect of registration on jurisdiction, before concluding that the particular state statute did not amount to consent). Our court found that it was clear, at least at one time, that the jurisprudence of the United States Supreme Court provided that a corporate defendant could consent to jurisdiction by registration. *Syngenta I*, 2016 WL 1047996,

at *2; *see also*, *e.g.*, *Pennsylvania Fire Ins.*, 243 U.S. at 96.  And our court determined that none of the Supreme Court's more recent jurisprudence has overturned this rule.  *Syngenta I*, 2016 WL 1047996, at *2–3.

Consistent with *Syngenta I*, the court finds that KSIA is subject to general jurisdiction in Kansas because of its registration.  KSIA registered to do business in Kansas in 1997.  To comply with the registration statute, KSIA consented to suit in Kansas to the extent provided by the controlling statute, currently Kan. Stat. Ann. § 17-7931.  Doc. 8 at 11–15.

Defendants argue that *Syngenta I* was vacated on reconsideration.  Doc. 9 at 16.  Indeed, Judge Lungstrom addressed *Syngenta I* again in *In re Syngenta*, No. 14-md-2591-JWL, 2016 WL 2866166 (D. Kan. May 17, 2016) [hereinafter *Syngenta II*].  On reconsideration, Judge Lungstrom concluded that consent by registration would violate the dormant Commerce Clause and dismissed the claims by non-Kansas plaintiffs.  *Syngenta II*, 2016 WL 2866166, at *1.

*Syngenta II*'s reconsideration ruling relied heavily on *Davis v. Farmers' Coop. Equity Co.*, 262 U.S. 312 (1923).  And close analysis reveals that *Davis* involved materially different jurisdictional facts from those presented here.  In *Davis*, the Supreme Court considered a motion to dismiss for lack of personal jurisdiction.  A Kansas plaintiff brought suit in Minnesota against a Kansas defendant.  *Davis*, 262 U.S. at 314.  And like the case here, the *Davis* plaintiffs relied on a registration statute to furnish the predicates for jurisdiction.  The Supreme Court found that the Minnesota registration statute violated the Commerce Clause as applied to the non-resident defendant.  *Davis*, 262 U.S. at 315.  But, the Court specifically noted that a statute like the one at issue in *Davis* might be valid if the transaction had arisen in that state or the plaintiff had been a resident there.  *Syngenta II*, 2016 WL 2866166, at *4 (discussing *Davis*, 262 U.S. at 316–17).

Eleven years later, in *International Milling Co. v. Columbia Transportation Co.*, 292 U.S. 511 (1934), the Supreme Court confirmed that plaintiff's residency is an important factor in the Commerce Clause analysis. In *International Milling*, the Court considered jurisdiction under a writ of attachment. *Id.* at 515. Departing from *Davis*, the Court found that personal jurisdiction over the non-resident defendant did not violate the Commerce Clause because the plaintiff was a resident of the forum state and the nature of defendant's activities in the forum state did not render jurisdiction there unreasonable. *Int'l Milling, Co.*, 292 U.S. at 520. The Court noted that plaintiff's residence in the forum state, while not controlling, is "a fact of high significance." *Id.*

In *Syngenta II*, our court determined that the "Kansas registration statute, as applied in" claims by non-resident plaintiffs, "discriminates against interstate commerce in practical effect." *Syngenta II*, 2016 WL 2866166, at *5. The court found that the Kansas registration statute was unconstitutional as applied to the facts presented in those 24 plaintiffs' claims. *Id.* at *6. But plaintiffs here are different. Like the plaintiff in *International Milling*, plaintiffs here are Kansas residents. And residency is a factor of "high significance" weighing against finding a Commerce Clause violation. *Int'l Milling, Co.*, 292 U.S. at 520. Thus, *Syngenta II* does not support a holding that exercising personal jurisdiction over defendants here would violate the Commerce Clause. In keeping with our court's rationale in *Syngenta I*, the court holds that KSIA has consented to general personal jurisdiction by its registration to do business in Kansas.

### B. Specific Jurisdiction

Even if the court is wrong and lacks general personal jurisdiction over defendants, the court considers that specific personal jurisdiction exists over defendants. The Tenth Circuit articulates three inquiries for courts to determine whether specific jurisdiction exists: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2)

8

whether the plaintiff's injuries arose from those activities; and, (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

Plaintiffs assert that specific jurisdiction exists over defendants because Kansas's long-arm statute provides jurisdiction over any claim arising from commission of a "tortious act in th[e] state." Kan. Stat. Ann. § 60-308(b)(1)(B). And, our court has interpreted this provision broadly to find personal jurisdiction over a nonresident defendant where the effects of a tortious act occurring outside Kansas are felt by plaintiffs in Kansas. *See Corinthian Mortg. Corp. v. First Sec. Mortg. Co.*, 716 F. Supp. 527, 529 (D. Kan. 1989) ("even though a tortfeasor acts outside the state, a tort occurs in Kansas for purposes of long-arm jurisdiction if the act cause[s] tortious injury to a resident in the state." (internal quotation marks omitted)); *see also Chem-Trol, Inc. v. Christensen*, No. 09-2024-EFM, 2009 WL 1044613, at *2 (D. Kan. Feb. 4, 2009) (finding where alleged tortious interference injury was suffered at plaintiff's principal place of business in Kansas, the injury occurred in Kansas for purpose of the long-arm statute).

Plaintiffs allege both economic and non-economic damages, including damage to their reputation, credibility, and standing in the community. Plaintiffs are Kansas residents, and they experienced injuries from defendants' alleged acts in Kansas. So, the injuries occurred in Kansas for purposes of Kansas's long arm statute, and the court has specific personal jurisdiction over defendants for actions arising out of plaintiffs' claims.

### C. Fair Play and Substantial Justice

Defendants argue that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. As outlined earlier, the court considers five factors to determine whether exercising jurisdiction would offend traditional notions of fair play and

9

substantial justice. Defendants have addressed each factor and the court now turns to their arguments.

First, defendants assert that it would be unduly burdensome to litigate in Kansas because KSIA does not have an office, any employees, or other physical presence in Kansas. Doc. 7 at 11. Second, defendants contend that Kansas does not have an interest in resolving the dispute because the subject of the dispute occurred outside Kansas and the court will not apply Kansas substantive law to make its decision about plaintiffs' claims. Doc. 7 at 11. Third, defendants argue that plaintiffs can seek effective relief in another jurisdiction, like Illinois. Doc. 7 at 11. Fourth, defendants contend that Kansas is not the most efficient place to litigate the dispute because the relevant evidence is located in other states, namely Illinois, Washington, and California. Doc. 7 at 11. Finally, defendants contend that litigating in Kansas will neither advance nor deter substantive social policies. Doc. 7 at 11.

The court finds that exercising personal jurisdiction over defendants would not offend traditional notions of fair play and substantial justice. For the first factor, defendants offer no evidence to support the notion that litigating in Kansas would pose an undue burden. While it may be inconvenient for defendants to litigate in Kansas given their limited physical presence in the state, defendants have not shown that litigating in Kansas would present real hardship. And, "[d]efending a suit in a foreign jurisdiction is not as burdensome as in the past." *Strasburg-Jarvis Inc. v. Radiant Sys., Inc.*, No. 06–2552–CM, 2008 WL 627486, at *4 (D. Kan. Mar. 4, 2008) (citing cases that discuss the progress made in modern communications and travel that thus lessens the burden of litigating elsewhere).

For the second factor, Kansas has an interest in adjudicating the dispute because Kansas residents have sustained injury. For the third factor, though plaintiffs can seek effective relief in

other jurisdictions, their home jurisdiction is the most convenient one for obtaining efficient relief.  For the fourth factor, defendants concede that the evidence for this litigation is in Illinois, Washington, and California.  Because evidence is located in several different states—Illinois, Washington, and California— Kansas is no less efficient a place to resolve the claim than any other state.  Finally, the court agrees with defendants that the fifth factor—Kansas's interest in furthering substantive social policies—is neutral.  Taking these factors together, traditional notions of fair play and substantial justice do not preclude exercising personal jurisdiction over defendant.

### D.  The Fiduciary Shield Doctrine

Finally, Mr. Sohn asserts that even if the court finds that personal jurisdiction exists over KSIA, the fiduciary shield doctrine prevents the exercise of personal jurisdiction over him.  The fiduciary shield doctrine protects individual officers of a corporation from having to litigate in a jurisdiction "[w]here the acts of individual principals . . . were carried out solely in the individuals' corporate or representative capacity." *Ten Mile Indust. Park v. W. Plains Servs. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).  "[T]he Tenth Circuit has accepted the use of the fiduciary shield doctrine for individual corporate officers defending a tort claim where they have no personal contacts, independent of their representative contacts, with the forum and where there is no factual basis to pierce the corporate veil." *Caldwell-Baker Co. v. S. Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1262 (D. Kan. 2002).  Jurisdiction over officers of a corporation "must be based on their personal, not representative, contacts with the forum." *Id.*

But, "there are circumstances under which nonresident individuals" may be subject to personal jurisdiction because "of the individuals' role with respect to a corporation." *Dazey*

11

*Corp. v. Wolfman*, 948 F. Supp. 969, 975 (D. Kan. 1996). This includes when the individual allegedly used the corporate entity to promote injustice or fraud. *Id.*

In *Dazey Corp.*, our court considered the fiduciary shield doctrine as applied to the officer of a corporation sued for making a fraudulent promise of future events and fraud by silence—two Kansas common law torts. *Id.* at 971. *Dazey Corp.* concluded that the fiduciary shield doctrine did not preclude Kansas from asserting jurisdiction over the officer because the plaintiff was not seeking to assert jurisdiction over the officer by virtue of jurisdiction over the company. *Id.* at 976. Instead, plaintiff asserted jurisdiction over the officer based on the torts that the officer himself had committed. *Id.*

Here, plaintiffs explicitly allege that Mr. Sohn committed the torts. *See* Doc. 5 at 6 (alleging that "[d]efendant Sohn communicated and/or published false and misleading statements about [p]laintiffs to third parties" and that he made the statements in both his individual and representative capacities). Plaintiffs assert jurisdiction over Mr. Sohn on the basis of his own actions, and so, the fiduciary shield doctrine does not preclude the court from asserting jurisdiction over Mr. Sohn.

### IV. Conclusion

The court has general jurisdiction over defendants by virtue of their registration to do business in Kansas. The court also has specific jurisdiction over defendants because defendants purposefully directed their activities at residents of Kansas and the alleged injuries arose from those activities. And finally, exercising personal jurisdiction over defendants would not offend traditional notions of fair play and substantial justice or abridge the fiduciary shield doctrine.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motions to Dismiss (Docs. 3, 6) are denied.

**IT IS SO ORDERED.**

**Dated November 30, 2016, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**