# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SNYDER INSURANCE SERVICES, INC.
and RAYMOND F. SNYDER,

        **Plaintiffs,**

v.

MARK R. SOHN and KULIN-SOHN
INSURANCE AGENCY, INC.,

        **Defendants.**

Case No. 16-CV-2535-DDC-GLR

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Mark R. Sohn and Kulin-Sohn Insurance Agency's Motion to Dismiss (Doc. 12) plaintiffs' Snyder Insurance Services, Inc. ("SIS") and Raymond F. Snyder's First Amended Complaint. This motion represents defendants' third motion to dismiss. Plaintiffs responded to the current motion (Doc. 16), and defendants now have replied (Doc. 17). For reasons explained below, the court grants defendants' motion, but only in part. The court explains its reasoning, below, and also explains what is granted and what is denied.

### I. Facts Governing Defendants' Motion to Dismiss

The following facts are taken from plaintiffs' First Amended Complaint (Doc. 5). Because the current dismissal motion relies on Fed. R. Civ. P. 12(b)(6), the courts accepts the pleaded facts as true and views them in the light most favorable to them.[1]

---

[1] *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (explaining that, on a motion to dismiss, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff" (citation omitted)).

Defendant Mark R. Sohn, an Illinois resident, owns Kulin-Sohn Insurance Agency, Inc., an insurance company incorporated under Illinois law and having its principal place of business in Illinois.  Plaintiff SIS is an insurance brokerage company that specializes in insuring amateur sports and children's fitness centers across the country.  Plaintiff Raymond F. Snyder is SIS's president.  The First Amended Complaint alleges that Mr. Snyder is a Kansas resident and that SIS is a Kansas corporation with its principal place of business in Kansas.

In February 2016, defendants filed a complaint with the State of Washington Office of Insurance Commissioner ("Washington OIC").  Defendants' complaint to Washington OIC alleged that plaintiffs:  (1) falsified and/or altered insurance documents; (2) misrepresented the number of students on their insurance applications to reduce the premiums charged on the policies; (3) defrauded insurance carriers; (4) repeatedly solicited clients with the intent of indirectly placing them with unauthorized insurers; (5) engaged in a pattern of fraud to gain a business advantage; and (6) violated Washington laws, regulations, and rules.  Doc. 5 at 4.  According to plaintiffs' allegations here—ones the court must accept as true for present purposes—defendants did not conduct reasonable due diligence to determine whether their allegations were true or false before filing their complaint.  And, as a result of defendants' complaint, the Washington OIC launched an investigation into defendants' allegations, eventually concluding that they were false and unsubstantiated.

In April 2016, Mr. Sohn contacted Precision Gymnastics ("Precision"), one of plaintiffs' clients in California.  Mr. Sohn communicated to Precision that plaintiffs had lied to them, had misled them to make them believe they had insurance coverage when, in fact, they did not, and similarly had misled and defrauded other gyms.  Like the assertions made in defendants' Washington OIC complaint, Mr. Sohn's statements to Precision are untrue ones.

## II.     Legal Standard

Defendants move to dismiss the case under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss under Rule 12(b)(6) the court must assumes that a complaint's factual allegations are true. But legal conclusions are different. The court need not accept mere legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. In addition to the complaint's factual allegations, the court also may consider "attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

**III. Analysis**

Before addressing defendants' arguments, the court must determine which state's substantive law governs plaintiffs' claims. *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1221 (D. Kan. 1998) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the court has diversity subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332. Federal courts sitting in diversity apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Kansas applies the law of the state where the tort occurred. *Brown v. Kleen Kut. Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986); *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995). Under this rule, the law of the "place of the wrong controls." 889 F. Supp. at 1455. "The 'place of the wrong' is that place where the last event necessary to impose liability took place.'" *Dofasco, Inc.*, 889 F. Supp. at 1456 (quoting *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). "Under this rule, the tort is deemed to have occurred where the wrong was felt." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1276 (D. Kan. 1998).

Neither party disputes that Kansas law applies in this case. Indeed, both parties cite Kansas case law in their briefs. Also, plaintiffs are Kansas residents asserting defamation and tortious interference claims. Thus, the wrongs they experienced were felt in Kansas, making Kansas the source of the substantive law governing plaintiffs' claims.

**A. Plaintiffs' Defamation Claim**

An actionable defamation claim under Kansas law requires three things: (1) false and defamatory words; (2) communicated to a third party; and (3) resulting harm to the person defamed. *See El-Ghori v. Grimes*, 23 F. Supp. 2d 1259, 1269 (D. Kan. Sept. 24, 1998); *see also*

4

*Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293 (Kan. Ct. App. 1984). Defendants assert plaintiffs have failed to state a defamation claim because they failed to identify, specifically, the identities of the person who heard or otherwise received the allegedly defamatory statements. Defendants also argue that plaintiffs failed to plead the time and place of the defamatory statements.

But Rule 8 "does not require 'detailed factual allegations.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While labels and conclusions will not suffice, plaintiffs' amended complaint here does far more than defendants suggest. Kansas law required plaintiffs to allege that defendants made false and defamatory statements. They did so. The First Amended Complaint alleges that defendants filed a complaint with the Washington OIC and this complaint included six statements that were false and defamatory. Six subparagraphs identify the content of the false statements. *See* Doc. 5 at 3–4. Kansas law also required plaintiffs to allege that defendants communicated the statements to a third party. Plaintiffs did that too. They alleged that defendants communicated the false statements to the Washington OIC. *Id.* (¶ 21). And plaintiffs alleged that Mr. Sohn communicated similarly false statements to plaintiffs' client, Precision. *Id.* (¶ 27). Finally, the substantive law governing this defamation claim required plaintiffs to allege that the statements' publication injured their reputation. Paragraph 46a does exactly that—"As a direct result [of defendants' statements], Plaintiffs have incurred and continue to incur substantial damages. . . including. . . [i]mpairment of [their] reputation." *Id.* at 7. On these factual allegations, plaintiffs' defamation claim is plausible on its face, sufficiently specific for defendants to defend, and it survives defendants' Rule 12(b)(6) challenge.

### B. Tortious Interference with Contractual Rights and Business Relations

The court next turns to plaintiffs' tortious interference with contract claim. Kansas law identifies the elements of a tortious interference with contract claim as: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages. *See Reebles, Inc. v. Bank of Am., N.A.*, 25 P.3d 871, 875 (Kan. Ct. App. 2001) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994)). This tort is "aimed at preserving existing contracts." *Id.* (citing *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986)). Defendants contend that plaintiffs have missed the pleading mark because they have not pleaded facts that, if proved true, could satisfy all of these elements. Defendants say that plaintiffs merely have supplied "conclusions" and "not facts." Doc. 13 at 3. They focus their attack on three elements of this claim—the first (contract existed), second (defendants knew about the contract), and third (intentionally procured contract's breach). For reasons that will explain themselves, the court begins it analysis with the third element.

This element requires allegations that defendants intentionally procured the breach of a contract. *Reebles, Inc.*, 25 P.3d at 875. Defendants argue that plaintiffs failed to plead this element sufficiently because they merely asserted that defendants "interfered with [p]laintiffs' existing contractual and business relationships with its clients, resulting in a breach thereof." Doc. 5 at 7. They didn't allege any facts to support this conclusion. This time, defendants' challenge is well-taken. Without more, plaintiffs' general allegation that defendants interfered with existing contracts "resulting in breach" exemplifies the kind of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that won't suffice in the post-*Iqbal* world. *See* 556 U.S. at 678.

Plaintiffs' failure to plead this required element sufficiently means that they have not provided sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The court thus grants defendants' Motion to Dismiss plaintiffs' tortious interference with contractual relations claim, but without prejudice to reasserting that claim in the future. If plaintiffs' investigation and discovery reveals facts that, if proven true, could support this claim, they may move for leave to amend their complaint. But the era where vague generalizations can serve as placeholders for a claim that may or may not exist has passed.

This conclusion renders defendants' other attacks on this cause of action moot. Still, issues in this case seem to resurface. So, hoping that additional commentary will minimize the need for disputes that careful pleading might avoid, the court briefly addresses defendants' other arguments.

Defendants argue that plaintiffs' amended complaint inadequately identifies the contract (or contracts) with which defendants purportedly interfered. Defendants rest this argument on the absence of any allegation about the identity of parties to the injured contract, or any description of its substance. Plaintiffs respond, arguing that *Iqbal* and *Twombly* do "not require detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*). That much is true. But those cases also explain that pleading a cause of action properly requires more than a legal catechism. *Id*. at 678 ("labels and conclusions" and "formulaic recitation[s]" won't suffice). The First Amended Complaint's passing reference to "[p]laintiffs' existing contractual and business relationships with its clients" falls well short of Rule 8's standard. A plaintiff who hales a defendant into court for interfering with a contract ought to know—and plead—the contract it lost by the defendant's actionable interference. This is evident from the substantive

legal formulation requiring such a plaintiff to allege also that defendant's interference has caused breach of the contract and thereby damaged plaintiff. *Reebles, Inc.*, 25 P.3d at 875.

But other aspects of defendants' arguments are less appealing. The second element of a tortious interference claim requires that the purportedly interfering defendant knew about the contract's existence. *Reebles, Inc.*, 25 P.3d at 875. Our court, applying Kansas law, has held that "actual or constructive knowledge" will suffice. *See Indy Lube Invs., LLC v. Wal-Mart Stores, Inc.*, 199 F. Supp. 2d 1114, 1124 (D. Kan. 2002) (citing *Petroleum Energy, Inc. v. Mid-Am Petroleum, Inc.*, 775 F. Supp. 1420, 1429 (D. Kan. 1991)). The Amended Complaint here conforms its allegation to this element's alternatives by alleging that defendants "knew or should have known" about the contract with which they purportedly disrupted. This allegation is sufficient for pragmatic reasons. At the beginning of a tortious interference case, the plaintiff may know quite a bit about the defendant. And, from that familiarity, the plaintiff may know that the defendant's sophistication and market knowledge will permit plaintiff to prove that defendant "should have known" about the contract that plaintiff lost. Under Kansas law, that showing would suffice. *Indy Lube Invs., LLC*, 199 F. Supp. 2d at 1124. Requiring the plaintiff's complaint to recite all facts that it might use to support such an inference crosses the line and tries to require the plaintiff to make "detailed factual allegations." *Twombly*, 550 U.S. at 555. That is not what Rule 8 requires.

### C. Tortious Interference with Prospective Business Advantage or Relations

Like tortious interference with contracts, tortious interference with business relations— TIBR, for short—is "predicated on malicious conduct by defendant." *Byers v. Snyder*, 237 P.3d 1258, 1269 (Kan. App. 2010). But while tortious interference with an existing contract "seeks to preserve existing contracts," TIBR "seeks to protect future or potential contractual relations." Id.

In Kansas, TIBR requires pleading and proof of: "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of the defendant's misconduct." *Id.* (quoting *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986)).

Defendants contend that plaintiffs have not alleged sufficient facts to state a TIBR claim. Again, defendants contend that plaintiffs just invoke conclusions, not facts. The court agrees. Plaintiffs merely have asserted that they had "existing business relationships with their clients and expectancies of prospective business with prospective clients." Doc. 5 at 8. But plaintiffs never supply a fact to support their recitation of the claim's elements. Surely a plaintiff who has suffered damages by this form of interference has the capacity to identify—and allege—the relationships that defendants have damaged. Defendants also assail plaintiff's pleading support for the second, third, fourth, and fifth elements. Some of those attacks are less appealing than others. Without addressing each nuance of the parties' argument, the court concludes that plaintiffs' TIBR claim suffers from the same defect as their contract interference claim—they have not stated sufficient facts to state a claim for relief that is plausible on its face. The court thus grants defendants' Motion to Dismiss plaintiffs tortious interference with prospective business advantage or relations claim without prejudice. If plaintiffs later develop facts that might support this claim and wish to amend their complaint, they may move to do so.

## IV. Conclusion

"Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Here, plaintiffs have amended their complaint once already, and even their First Amended Complaint often fails to plead "factual content" that allows the court to "draw the reasonable inference that the defendant[s] [are] liable" for tortious interference claims. *Id.* at 678.  Because plaintiffs have not pleaded sufficient underlying facts with any specificity to support these claims, the court's common sense leads it to:  (a) deny the motion as it applies to plaintiffs' defamation claim; and (b) grant the motion, but without prejudice, for plaintiffs' two tortious interference claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 12) is granted in part and denied in part according to the terms of this order.

**Dated this 3rd day of July, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**