IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SNYDER INSURANCE SERVICES,
INC. and RAYMOND F. SNYDER,

        Plaintiffs,

v.

KULIN-SOHN INSURANCE AGENCY,
INC. and MARK R. SOHN,

        Defendants.

Case No.  16-2535-DDC-GLR

## MEMORANDUM AND ORDER

Amateur sports and fitness activities play a substantial role in the development of American youth.  Often, the gyms and fitness centers who host these activities elect to buy insurance coverage to protect themselves from liability.  The parties in this case—plaintiff Snyder Insurance Services, Inc. and defendant Kulin-Sohn Insurance Agency, Inc.—both provide insurance brokerage services to amateur sports venues and children's fitness centers. But there's some bad blood between these two.  Snyder Insurance and plaintiff Raymond Snyder—an agent and Snyder Insurance's owner and President—allege that Kulin-Sohn Insurance and defendant Mark Sohn—Kulin-Sohn Insurance's owner and also an agent—have made defamatory remarks about plaintiffs and caused plaintiffs to lose some of their clients.

Currently before the court is defendants' Motion to Dismiss (Doc. 33).  In it, defendants argue that the Complaint[1] fails to allege a tortious interference with prospective business relations claim sufficiently.  For reasons explained below, the court denies the motion.

---

[1]     The Complaint at issue here is the third Complaint filed in this lawsuit.  *See* Doc. 32.  For simplicity, the court will refer to it as "the Complaint."

I.      **Facts**

Because defendants' motion relies on Federal Rule of Civil Procedure 12(b)(6), the court must accept the well-pleaded facts in the Complaint as true.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).  It also must construe the alleged facts in the light most favorable to plaintiff.  *Id.*

As explained above, Snyder Insurance and Kulin-Sohn Insurance are insurance brokers who insure amateur sports and children's fitness centers.  Mr. Snyder is the owner, President, and an agent for Snyder Insurance.  Mr. Sohn owns Kulin-Sohn Insurance and acts as an agent for that company.  The market for insuring amateur sports and children's fitness centers is a relatively small, niche segment of the larger insurance market.

In 2016, defendants told several of plaintiffs' clients—including Emerald City Gymnastics, All-Star Gymnastics, and Ninja Zone—that plaintiffs had lied to them, misled them about their insurance coverage, and misled other gyms about their insurance coverage. Defendants also said that plaintiffs had lied to plaintiffs' insured and insurance carriers.  Snyder Insurance expected Emerald City, All-Star, and Ninja Zone to continue to renew their policies through Snyder Insurance and possibly refer new clients there.  Particularly, Snyder Insurance expected Ninja Zone to refer new clients because it franchises its program curriculum to other gyms who might need the same type of insurance.  Mr. Snyder expected to receive commissions and broker's fees for anticipated renewals by Emerald City, All-Star, and Ninja Zone.  But he allegedly lost these earnings when they secured insurance through someone else.

Defendants made these statements despite knowing they were false.  Indeed, defendants had made similar statements in 2004 and 2008.  When defendants made the false statements in

2004 and 2008, plaintiffs sent defendants cease and desist letters, cautioning defendants to stop making false statements to plaintiffs' clients.

Plaintiffs now have filed this lawsuit against defendants. In the newly amended Complaint, plaintiffs bring two claims: defamation (Count I) and tortious interference with prospective business relations and advantage (Count II). Previously, the court ruled that the Complaint sufficiently alleged a defamation claim. Doc. 18 at 5. But, in the same Order, the court held that the prior Complaint required more specific factual allegations to plead a sufficient claim for tortious interference with prospective business relations ("TIBR"). *Id.* at 9. On March 1, 2018, plaintiffs filed an amended Complaint. Two weeks later, defendants filed this motion challenging the sufficiency of the allegations supporting the TIBR claim.

## II.    Legal Standard

On a motion to dismiss for failure to state a claim, the court accepts all facts pleaded by the non-moving party as true and draws any reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am.*, 757 F.3d at 1136. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This is so because the court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    Discussion

As explained above, defendants' current motion solely challenges the sufficiency of the allegations supporting the Complaint's TIBR claim. In Kansas,[2] TIBR requires pleading and proof of: "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of the defendant's misconduct." *Byers v. Snyder*, 237 P.3d 1258, 1269 (Kan. Ct. App. 2010) (quoting *Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986)).

---

[2]    In a diversity jurisdiction case, like this one, federal courts apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, that is Kansas. For the tort claims, Kansas law applies the "law of the 'place of the wrong.'" *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1455 (D. Kan. 1995) (citing *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). "The 'place of the wrong' is that place where the last event necessary to impose liability took place." *Id.* "In the case of alleged financial harm . . . , the court looks to the state in which the plaintiff felt the harm." *Carolina Indus. Prods., Inc. v. Learjet, Inc.*, 189 F. Supp. 2d 1147, 1163 n.12 (D. Kan. 2001). A corporate plaintiff feels financial harm in the state where it maintains its principal place of business. *See id.* (using Kansas choice of law principles and applying Georgia law to a tortious interference with business expectancy claim because plaintiffs' principal place of business was in Georgia). Here, Snyder Insurance's principal place of business and Mr. Snyder's place of resident is in Kansas, Doc. 32 ¶¶ 1, 2, so the court applies Kansas law to the TIBR claim.

Defendants argue that the Complaint fails to allege the first three elements of this tort sufficiently.  In the next three subsections, the court addresses the merits of defendants' argument.

### A.    The existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiffs

The first element of this tort requires the Complaint to allege that plaintiffs had a business relationship or expected to secure one with a probability of future economic benefit.  *Meyer Land & Cattle Co. v. Lincoln Cty. Conservation Dist.*, 31 P.3d 970, 975–76 (Kan. Ct. App. 2001).  To survive a motion to dismiss, plaintiffs must allege more than generalized damage to its business reputation or public stigma.  *Id.* at 976.  Instead, plaintiffs must plead a particular business relationship with which defendants interfered.  *Id.*  Here, the Complaint alleges that plaintiffs had a business relationship with Emerald City, All-Star, and Ninja Zone.  Doc. 32 ¶ 44.  So, the Complaint identifies the particular business relationships defendants allegedly interfered with, and thus sufficiently alleges the existence of a business relationship.

Defendants assert four arguments that show, in their minds, at least, why the Complaint fails to allege this element sufficiently.  First, defendants argue that the Complaint fails to allege who the prospective or current clients were with whom plaintiffs had a relationship.  Doc. 34 at 3.  But, as already identified, the Complaint specifies at least three relationships with which defendants allegedly interfered.  This argument is wholly unpersuasive.

Next, defendants argue that the Complaint fails to allege the nature of the existing or prospective relationship.  *Id.*  But, as already observed, the Complaint alleges that Emerald City, All-Star, and Ninja Zone were plaintiffs' clients.  So, the economic relationship between plaintiffs and these lost clients was that of insurance broker and insured.  The Complaint thus

identifies the nature of the existing economic relationship between plaintiffs and the clients they allegedly lost.

Third, defendants argue that the Complaint cannot allege this element sufficiently. They argue that the Complaint merely alleges defendants interfered with future "referrals"—but never alleges who the referrals are. To be sure, simply alleging that plaintiffs had future business opportunities with unspecified people or businesses would not sustain a claim for TIBR. *See Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1237 (D. Kan. 2009) ("Under Kansas law, general conclusory allegations of the type made by the plaintiffs, *i.e.*, potential contracts with unspecified [American Kennel Club] dog owners, are insufficient to show the existence of a business relationship or expectancy with the probability of future economic benefit."). Had the Complaint merely alleged that plaintiffs expected referrals from previous clients, the court might find the motion persuasive. But the Complaint alleges more than defendants pretend it does. It alleges that plaintiffs had a business relationship or expectancy of a business relationship with three specific businesses—Emerald City, All-Star, and Ninja Zone. So, this argument provides no basis for dismissing the TIBR claim.

Last, defendants argue that the Complaint fails to allege that Mr. Snyder had any business relationship that is separate and distinct from Snyder Insurance. Again, this argument misapprehends the Complaint. It alleges that Mr. Snyder received commissions and broker's fees from Emerald City, All-Star, and Ninja Zone that he expected to continue to receive. Doc. 32 ¶ 41. The Complaint thus alleges a separate business relationship that Mr. Snyder expected to enjoy into the future with the lost clients that is different from the relationship between Snyder Insurance and the three lost clients.

In sum, the Complaint sufficiently alleges the first element of a TIBR claim.

### B.     Knowledge of the relationship or expectancy from the defendants

Defendants also argue that the Complaint alleges no facts to support the conclusion that they knew about plaintiffs' business relationships with their lost clients.  The Complaint alleges, "Defendants, as sophisticated parties and direct competitors in the same niche insurance field, had actual and constructive knowledge of these relationships and expectancies."  Doc. 32 ¶ 42. This allegation suffices to allege knowledge properly.  *See United States ex rel Smith v. Boeing Co.*, 505 F. Supp. 2d 974, 985 (D. Kan. 2007) (holding plaintiff sufficiently pleaded knowledge when the Complaint alleged that defendant "'knowingly' caused to be submitted through defendant . . . false or fraudulent claims for payment or approval . . . ." (quoting the Complaint)); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

The Complaint specifically alleges that defendants were "in the same niche insurance field" and were "sophisticated parties and direct competitors" to plaintiffs.  These allegations— assuming plaintiffs adduce admissible evidence to support them—provide a sufficient basis for an inference that defendants would know which businesses in the small arena of amateur sports procure their insurance through plaintiffs.  The Complaint thus sufficiently alleges defendants' knowledge of the plaintiffs' relationship with their lost clients.

### C.     Except for the conduct of the defendants, plaintiffs were reasonably certain to have continued the relationship or realized the expectancy

Finally, defendants argue that the Complaint does not allege sufficiently that their conduct caused plaintiffs to lose their clients.  The causation element of the TIBR tort requires plaintiffs to establish that, but for defendants' wrongful conduct, plaintiffs were reasonably certain to retain the business they lost.  *Kendall State Bank v. Archway Ins. Servs.*, No. 10-2617-KHV, 2012 WL 3758647, at *4 (D. Kan. Aug. 29, 2012).  The Complaint can allege this element

successfully by pleading facts that, if proven, would support a reasonable inference that plaintiffs would have retained the relationships but for defendants' misconduct.  *Id.*  Here, the Complaint alleges that defendants told the lost clients that plaintiffs had been lying to them and others about their insurance coverage.  Doc. 34 ¶ 40.  One reasonably could infer from these allegations that if defendants never had made these statements, the clients would still be insured through plaintiffs. The Complaint thus sufficiently alleges the causation element of this tort.

## IV.    Conclusion

For reasons explained above, the court denies defendants' Motion to Dismiss (Doc. 33).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 33) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of June, 2018, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**